VINCE D. NGUYEN, California Bar No. 171768
Newton Law Group
1275 S. Winchester Blvd., Suite E
San Jose, CA 95128
(408) 828-8078 * Fax (408) 624-1014
Email: vincen@newtonlawgroup.com

Attorney for Plaintiff TERI H. NGUYEN

**UNITED STATES FEDERAL COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

|  |  |
|---|---|
| TERI H. NGUYEN,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR INDENTURE TRUSTEE OF WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY07 TRUST; JP MORGAN CHASE BANK; AND DOES 1 TO 99<br><br>　　　　Defendants. | Case No: CV11-03318-LHK<br><br>**VERIFIED**<br>**FIRST AMENDED COMPLAINT**<br><br>1. **Cancellation of Deed Instrument**<br>2. **Slander of Title**<br>3. **Injunctive Relief**<br>4. **Violation of California Civil Code § 2923.5**<br>5. **Wrongful Foreclosure**<br>6. **Quasi-Contract**<br>7. **Unfair Business Practice [Violation of Cal. Bus. & Prof. Code § 17200 et Seq.] (Including Injunctive Relief to Void Mortgage)** |

## **COMPLAINT**

Teri H. Nguyen (hereinafter referred to as "Nguyen" or "Plaintiff",) for her

Verified Complaint, states as follows:

## **PARTIES & JURISDICTION**

1.　　Plaintiff Nguyen, an individual, lives and works in Santa Clara County.

Plaintiff is the original owner of the property by way of Grant Deed of the property

known as 15520, Quito Road, Monte Sereno, California 95030, APN: 410-36-007

("Property"), having the following Legal Description:.

> **Portion of Lots 13 and 14, as shown on that certain Map entitled, "Map of Los Gatos Uplands, which Map was filed for record in the Office of the Recorder of the County of Santa Clara, State of California on November 6, 1925 in Book "U" of Maps, pages 18 and 19, and being more particularly described as follows:**
>
> **Beginning at a point on the Northwesterly line of said Lot 14 at the most Northerly comer of that certain parcel of land described as Parcel No 2 in that certain Deed from Alvin Billingsley, et ux, to William E. Burns, et ux, dated October 9, 1958 and recorded October 21, 1958 in Book of Official Records, numbered 4207, page 349; thence along the Northeasterly line of said Parcel No. 2, S. 31o 08' 44" E. 199.96 feet and S. 38o 14' E. 10.04 feet to an Iron pipe at the most Easterly corner of said Parcel No. 2, thence along the Southeasterly line of said Parcel No. 2, S. 51o 43"40" W. 98.11 feet and S. 21o 34 ' 20" W. 40.36 feet to an iron pipe; thence N, 44o 15' 44" W. 14'4.27 feet to an iron pipe; thence S. 47o 20' 52" W, 284.55 feet to a point in the center line of Quito Road; thence along said center line of Quito Road N. 18o 16' 20" W. 52 feet more or less, to the point of intersection thereof with the Northwesterly line of Lot 13, as said Lot 13 is shown on the Map hereinabove referred to; thence along the Northwesterly line of Lot 13 and the Northwesterly line of said Lot 14, the following s courses and distance  to wit: N. 67o  37' E. 52.39 feet, N. 31o  06'    E. 72.60 feet N. 55o 24' E. 115.50 feet N. 12o 25' E. 83.29 feet, N. 60o. 17' E. 97.35 feet and N. 42o30' E. 41 .68 feet to the point of beginning.**

2.      Defendant BANK OF AMERICA, NATIONAL ASSOCIATION as Successor Indenture Trustee of WaMu Mortgage Pass-Through Certificates Series 2007-HY07, ("BOA") is, and at all times mentioned in this complaint was a corporation, organized under the laws of the State of North Caroline and is doing business nationwide. On its website, BOA shows its address as 100 N Tryon Street # 220, Charlotte, NC 28202. BOA claims to be a note holder by its capacity as "SUCCESSOR BY MERGER TO LASALLE BANK NA AS TRUSTEE FOR WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY7 TRUST", which is, or was, the investment trust that supposedly keeps the note in subject.  In addition, BOA also claims to be the beneficiary of the deed of trust in subject through the assignment of "Deed of Trust beneficial interest" from JPMORGAN CHASE BANK as successor in interest to Washington Mutual Bank, FA.

3.       Defendant JPMORGAN CHASE BANK ("Chase") is, and at all times mentioned in this complaint was a corporation, organized under the laws of the State of Ohio and is doing business nationwide. On its website, Chase shows its address as Mail Code: OH4-7302, P.O. Box 24696, Columbus, OH 43224. In the past, Chase claims to be holding the security interest on the Property and has assigned this security interest to BOA.  At the present time, Chase claims that it is the servicer on the note.

4.       Plaintiff is unaware of the true names and capacities of the defendants sued herein as DOES 1 through 99, inclusive, and therefore sue said defendants by such fictitious names.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of said defendants when the same are ascertained. Plaintiff is informed and believe, and on that basis allege, that each of these fictitiously named defendants claim some right, title, estate, lien, or interest in the Property adverse to Plaintiff's title; that each of them is responsible in some manner for the wrongful conduct alleged; and that their claims, and each of them, constitute a cloud or potential cloud on Plaintiff's title to that property.

5.       Plaintiff is informed and believes, and on that basis alleges, that at all times relevant hereto, each defendant sued herein was the agent, servant and/or employee of each of the co-defendants, and in doing the things herein alleged, was acting individually and within the authority and/or scope of such agency.

6.       Upon information and belief, DOES 1-99 claim to have become successors in interest to the Subject Mortgage by virtue of Plaintiff's loan having been made a part of a securitization process wherein certain residential mortgages and the promissory notes based thereon were securitized by aggregating a large number of promissory notes into a mortgage loan pool, then selling security interests in that pool of mortgages to investors by way of items called "Secondary Vehicles".

7.       There is diversity of citizenship between Plaintiff and Defendants and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000. This court has jurisdiction of the action pursuant to 28 U.S.C. 1332(a).

8.       Declaratory relief is authorized under 28 U.S.C. § 2210.

## **JURY TRIAL DEMAND**

9.       Plaintiff demands a jury trial on all issues.

## CLAIM FOR RELIEF

10.    Plaintiff brings this action against BOA and Chase, seeking declaratory relief of mortgage ownership in the subject property claimed by these Defendants and their wrongful declaration of default without valid security interest of the obligation.

## BACKGROUND FACTS

### The Two Loans in 2007 with Washington Mutual Bank F.A.

11.    Nguyen was the original owner of the Property.   In April 2007 Washington Mutual Bank F.A. ("WaMu") refinanced her mortgage loan in the amount of $2,500,000 (the "Loan").  For this loan, she signed a promissory note (the "Note") and a deed of trust dated April 24, 2007 (the "DOT") which secured the Note.  The DOT was recorded at the Recorder Office of Santa Clara County on May 1, 2007. Copies of the Note and the DOT are attached as **Exhibit 1.**  On the DOT, California Reconveyance Company ("CRC") is designated as trustee.

12.    In addition to the Loan, WaMu approved a second mortgage loan in the amount of $855,000 (the "Second Loan").  For this loan, she signed a promissory note (the "Second Note") and another deed of trust (the "Second DOT") which secured the Second Note.  The Second DOT was recorded at the Recorder Office of Santa Clara County also on May 1, 2007. Copies of the Second Note and the second DOT are attached as **Exhibit 2.**

13.    After the loan transactions were closed, Nguyen dutifully made payments on the two loans to WaMu until WaMu was out of business.

### Chase Took Over & the Faked Loan Modification

14.    On September 25, 2008, WaMu was shut down by the Office of Thrift Supervision (OTS).  FDIC, as receiver of WaMu assets, sold WaMu assets to JPMorgan Chase Bank ("Chase") for 1.9 billion.  Chase claims to be a new servicer of Plaintiff's loans and instructed Plaintiff to send payment to them.

15.    In the aftermath of the collapse of WaMu and later by Lehman Brothers, the US economy began to drastically decline.  Plaintiff continued to make payments on

the Note until December 2008, when she suffered a serious health problem and sought loan modification from Chase.

### Chain of Title

16.     On or about March 27, 2009, Chase executed an Assignment of Deed of Trust (hereafter the "ADOT") that "*hereby grants, assigns and transfers to Bank of America National Associations successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2007-HY7 Trust all beneficial interest under that certain Deed of Trust dated April 24, 2007 … TOGETHER with the note or Notes*". **Exhibit 3**.  The ADOT was recorded at the local county on March 30, 2009 as instrument 20190776.

17.     Chase claimed to be "<u>*successor in interest to Washington Mutual Bank, FA*</u>" and as party holding beneficial interest in Plaintiff's Note that is secured by the DOT.  However, such claim is false and is contrary to Chase's assertion in other cases pending in other courts that Chase is NOT successor in interest to Washington Mutual Bank, FA.

18.     Consequentially, Chase's contradictory position to suit its needs in different courts is a "*perversion of the judicial process*".

19.     BOA as successor indenture trustee of WaMu 2007-HY7 Trust claims beneficial interest in the obligation (Note) executed by Plaintiff purportedly delivered together with the ADOT from Chase.

20.     The FDIC, as receiver of asset owned by Washington Mutual Bank, FA , could only sell whatever assets WaMu had at the time of its failure.

21.     As evidence by public recording, there was no assignment of beneficial interest in Plaintiff's DOT by the FDIC to Chase.  Thus, Chase had no interest to assign to BOA and the ADOT is a "Wild Deed" conferring nothing upon BOA.

22.     At all time mentioned herein, BOA as indenture trustee never notified Plaintiff of its purported ownership in the Note and DOT that secured such Note. Plaintiff did not know BOA was the creditor.

23.     By Chase's instruction, on the same day March 30, 2009, trustee CRC recorded a Notice of Default ("NOD") on the Property also at the local county even though Chase had no beneficial interest in the DOT.  **Exhibit 4**.

24.     On or about July 20, 2009, Chase, through CRC, caused to be recorded a Notice of Trustee Sale ("NOS") of the Property, scheduling an auction date of August 4, 2009. **Exhibit 5**.

25.     The July 20, 2009 NOS was signed purportedly by a person claimed as "*Deborah Brignac, Vice-President of CRC*".  Recently, this person has been named as one of the robo-signers, because dozen of signatures bearing her name, but different from each others, show up in nationwide public forum.  Sixteen (16) different signatures on various foreclosure-related documents around the country are shown on **Exhibit 6.**

## STATE COURT ACTION

26.     In 2009, Nguyen filed a Complaint against Chase in Santa Clara County Superior Court, Case No. 1-09-CV-159463.   The complaint alleged fraud [details on the fraud cause of action are presented below in this complaint], unfair business practice, and wrongful foreclosure, among other causes of action.  On the same day, Nguyen applied ex-parte for a temporary restraining order to stop the auction.  The court granted the TRO and set hearing for injunction in January 2010.

27.     At the preliminary injunction hearing in January 2010, Chase represented to the court that:

        a.  Chase was the owner of the Note, and

        b.  Chase was not responsible for the fraud committed by WaMu because Chase bought from FDIC only WaMu's assets and not WaMu's liabilities.

28.     Chase's representation to such Court was false and constituted fraud upon the Court for the following reasons:

        a.  Chase purportedly assigned its beneficial interest in Plaintiff's Note to BOA as indenture trustee by way of ADOT on or about 03/27/2009.

b.  Chase claimed to be "*successor in interest to Washington Mutual Bank, FA*" is false and contrary to its position as purchaser of asset from the FDIC.

### BANKRUPTCY PROCEEDING

29.   On February 1, 2010, Nguyen transferred title to the Property to Rose Court LLC (in which she is a member) which was better equipped to deal with foreclosing lenders on legal matter. Rose Court LLC, on February 1, 2010, filed for protection under Chapter 11 in the Bankruptcy Court of Northern District of California, Case No. 10-50993-SLJ.

30.   In the Bankruptcy Court, on July 27, 2010, BOA submitted its proof of claim ("POC") as indenture trustee of 2007-HY07 Trust.  This is the first time BOA ever appeared in any court proceeding involving the Note.  BOA's POC included the 03/27/09 ADOT (Exhibit 3), and a promissory note and a deed of trust that belong to another borrower unknown to Plaintiff.

31.   On August 18, 2010, BOA filed an Amended Claim.  The 08/28/10 Proof of Claims as filed by BOA is herein attached as **Exhibit 7**.

32.   In November 2010, within the Chapter 11 case, BOA filed Motion for Relief from Stay.  This time, in desperate attempt to prove its purported ownership, BOA presented a new Assignment of Deed of Trust dated August 24, 2010 and executed by Wanda Chapman, Vice President of Chase as "*Successor-in-Interest to Washington Mutual Bank, f/k/a Washington Mutual Bank, FA*" (hereinafter "ADOT1").  Similar as the March 27, 2009 ADOT, the August 24, 2010 Assignment contains the language that Chase "*hereby grants, assigns and transfers to Bank of America National Associations successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2007-HY7 Trust  all beneficial interest under that certain Deed of Trust dated April 24, 2007...*"  **Exhibit 8**.  The relief was not granted.

33.   The ADOT1 dated 08/24/10 was not recorded with County Recorder and was created as another "Wild Deed" to commit fraud upon the bankruptcy court.

34.     As part of Chapter 11 discussion, Chase's represented to Plaintiff that the bankruptcy case needed be dismissed as a pre-requisite for settlement and modification. In reliance on such representation, in May 2011, the debtor withdrew the Chapter 11 case.

35.     Chase denied modification despite Plaintiff's dismissal of the Chapter 11 protection.

### WAMU'S FRAUD AT LOAN ORIGINATION

36.     Back to the time the two WaMu loans were originated in April 2007, at WaMu's request, Nguyen submitted information relating to the Property and her financial situation (profit and loss statement, tax returns, bank account statements, etc) to WaMu.  Upon receiving the said information and documents from Nguyen via its loan officer David Huang, WaMu, through its employees, proceeded to prepare and completed the application for and on behalf of Nguyen.  However, the loan application, after being prepared, was never given back to Nguyen for her signature.  Relying on Huang's representation that it would be a simple process due to the fact that Nguyen was a long-time customer of WaMu, Nguyen did not request a copy of the application for her review and verification of the information contained therein. Afterwards, WaMu represented to Nguyen that her loan application was approved.

37.     Later, in July 2008, Nguyen found out that her loan application had been fabricated. Nguyen first learned about the fabrication when she received loan documents provided by WaMu as a result of her Qualified Written Request.  It turned out that the application, as fabricated by WaMu and retained in WaMu's file, did not have her signature, and that the information given by Nguyen to WaMu was falsified.   A copy of the application retained in WaMu's file is hereto attached as **Exhibit 9** and incorporated here by reference.

38.     On the said "Loan Application", Nguyen's monthly income (in 2007) was inflated to "*$25,001*" for "*Base Employment Income*" and "*$94.051*" for "*Other Income*". In fact, Nguyen has no knowledge where those figures came from.

39.     On the said "Loan Application", the balance of one of Nguyen's bank accounts is shown as *"$400,000"* with "*Account No. 11111111111.*" Again, Nguyen has no knowledge on where said figures came from.

40.     The recorded ADOT and un-recorded ADOT1 state the name of the assignee  as *"BANK OF AMERICA N.A., AS SUCCESSOR BY MERGER TO LASALLE BANK NA AS TRUSTEE FOR WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY07 TRUST,"* hereinafter the "WaMu 2007-HY07" Trust.

41.     There is no evidence whatsoever that the WaMu 2007-HY07 Trust has any interest in Plaintiff's loans.  Nevertheless, BOA as indenture trustee asserted the trust interest in Plaintiff's loans.

42.      The WaMu 2007-HY7 Trust contains pool of mortgage notes with aggregate value claimed to be about 2 billion dollars.  The trustee was LaSalle Bank National Association ("LaSalle Bank").  Securities backed by these notes (mortgage-back securities, or MBS) were issued and sold to investors around the world.  These securities were labeled "WaMu Mortgage Pass-Through Certificates Series 2007-HY7" (hereinafter the "Certificates Series 2007-HY7.")

43.     Pursuant to an agreement known as the Certificates Series 2007-HY7 Trust's Pooling Service Agreement (the "Trust PSA"), **Exhibit 10**, WaMu, which no longer had ownership interest on the Loan, retains the servicing right with respect to the notes contained in the pool.

44.     The pool of Notes were sold by WaMu to WaMu Assets Acceptance Corporation ("WAAC") and then to the trust.  In this case, the 2007-HY07 Trust claims beneficial interest in Plaintiff's mortgage directly from Chase, contrary to the term of the trust.

45.     On June 30, 2011, CRC, as instructed by Chase, who has no beneficial interest in Plaintiff's mortgage, recorded a new Notice of Sale (the "06/30/11 NOS"). The 06/30/11 NOS set an auction date on August 2, 2011. **Exhibit 11**.  Later, for reasons unknown to Plaintiff, the auction date was rescheduled to August 10, 2011. **Exhibit 12**.

## FIRST CAUSE OF ACTION
### Cancellation of the Deed Instrument
### (Against All Defendants)

### The Note

46.     Plaintiff incorporates herein by reference the allegations made in preceding paragraphs as though fully set forth herein.

47.     A promissory note that is payable to a specifically indentified person is not transferred merely by possession; instead, transfer requires that it be endorsed and delivered.  (California Com. Code 3201).  The Note as presented into evidence by BOA in the Chapter 11 case, contained no endorsement by WaMu or evidence of delivery by FDIC to Chase.

48.     The 2007-HY07 Trust's claim of ownership interest in Plaintiff's Note as holder in due course is therefore unsupported by evidence.

### The Deed of Trust

49.     As stated above, on March 30, 2009, Chase was NOT "successor in interest" to WaMu and Chase is collaterally estopped in asserting such contrary position in the ADOT.

50.     Chase's claim of "successor in interest" to WaMu is a "perversion of the judicial process." *See* New Hampshire v Maine, 532 US 742, 750 (2001) (quoting In Re Cassidy, 892 f.2d 637, 641 (7th cir 1990)).

51.     BOA beneficial interest in the obligation (promissory note) purportedly delivered together with security interest (DOT), derived from whatever interest Chase had.  In this case, Chase had none because it was not the successor in interest of WaMu; rather, it is FDIC.  Any purported transfer of asset, i.e. Plaintiff's promissory note, could only be sold by the FDIC as successor in interest of WaMu.  Therefore, the ADOT needs to be cancelled.

52.     When Chase acquired WaMu's assets on September 25, 2008 through FDIC, Chase only acquired what WaMu had at the time, which was servicing rights, and nothing more.

53.     As a servicer, Chase had no standing to assign "*the beneficial interest on the Deed of Trust*" to BOA. The 03/27/09 Assignment of the DOT is therefore invalid and the 2007-HY07 Trust received nothing from Chase.  BOA as indenture trustee of 2007-HY07 has no standing to take any action against the subject Property.

54.     By virtue of the foregoing, the purported foreclosure of Plaintiff's Property being conducted by CRC on behalf of 2007-HY07 trust is unauthorized and wrongful.

55.     As a result Plaintiff is entitled to, and still own, the Property, and is entitled to have their ownership of the Property reflected in the Official Records of Santa Clara County, California.  Nonetheless, the Deed of Trust, the Notice of Default, and the Notice of Sale constitute clouds on Plaintiff's title.  If these recorded documents are left outstanding, Plaintiff may lose her property without notice of the invalidity of these documents.

## SECOND CAUSE OF ACTION
### Slander of Title
### (Against All Defendants)

56.     Plaintiff incorporates herein by reference the allegations made in preceding paragraphs as though fully set forth herein.

57.     Chase's recordation of ADOT, claiming to be successor in interest is false. Chase had no beneficial interest in Plaintiff's DOT to assign to 2007-HY07 Trust. Chase's action constitutes improper clouds on Plaintiff's title to the property.

58.     Through its agent CRC, BOA recorded Notice of Default, Notices of Sale, as well as any related proceedings.  However, as indenture trustee of 2007-HY07 trust, BOA has no beneficial interest in Plaintiff's mortgage.  As a result the Notice of Default, the Notices of Sale, the Assignments of Deed of Trust and the Substitution of Trustee, and each of them, were and are invalid, and constitute improper clouds on Plaintiff's title to the Property.

59.     The recordation of the foregoing documents by these Defendants was false,

1   wrongful, without justification, in violation of statute, and without privilege, and slander

2   Plaintiff's title to the Property.

3   60.   The recording of the foregoing documents directly impaired the vendibility

4   of the property on the open market in the sum of not less than $2,500,000, or such

5   other sum as may be proved at the time of trial.

6   61.   The recording of the foregoing documents made it necessary for Plaintiff to

7   retain attorneys and to bring this action to cancel the instruments casting doubt on

8   Plaintiff's title.  Therefore, Plaintiff is entitled to recover attorneys' fees and costs

9   incurred in cancelling the instruments.  The exact amount of such damages is not known

10  to Plaintiff at this time, and Plaintiff will move to amend this complaint to state such

11  amount when the same becomes known, or on proof at the time of trial.

12  **THIRD CAUSE OF ACTION**
**Injunction Relief**

13  **(Against All Defendants)**

14

15  62.   Plaintiff incorporates herein by reference the allegations made in

16  preceding paragraphs as though fully set forth herein.

17  63.   As stated above, CRC, under instruction by Chase and BOA as indenture

18  trustee, has informed Nguyen that her Property will be auction on at first August 2, 2011,

19  then August 10, 2011.  This auction is scheduled in contrary to statutory and legal

20  requirements regarding foreclosure.

21  64.   Thus, Defendants' wrongful conduct of foreclosure, unless and until

22  enjoined and restrained by order of this Court, will cause great and irreparable injury to

23  Plaintiff, as the foreclosure sale of the Property will wrongfully dispossess her of her

24  right to possession of the property, displace her from her home, and will subject Plaintiff

25  to unwarranted and unnecessary humiliation and emotional distress as a result of their

26  wrongful eviction from the Property.

27  65.   Plaintiff has no adequate remedy at law for the injuries that will occur if

28  the planned foreclosure sale is permitted to proceed in that it will be extremely difficult,

if not impossible, for Plaintiff to determine the precise amount of damage she will suffer if Defendants' conduct is not restrained.  Moreover, real property is considered unique in California, and monetary damages are deemed inadequate to compensate Plaintiff for the loss thereof.

66.     Therefore, Plaintiff is therefore entitled to a temporary restraining order, preliminary injunction, and permanent injunction, enjoining BOA, Chase, and their agents, attorneys, and representatives, and all persons acting in concert or participating with them, from proceeding with the eviction and obtaining possession of the Property.

**FOURTH CAUSE OF ACTION**
**Violation of California CC § 2923.5**
**(Against All Defendants)**

67.     Plaintiff incorporates herein by reference the allegations made in preceding paragraphs as though fully set forth herein.

68.     Effective September 6, 2008, the Perata Mortgage Relief Bill became part of the law of the State of California and added Civil Code sections 2923.5 and following to the California Civil Code to alleviate what the State Legislature called an "unprecedented threat" to the state's economy caused by the skyrocketing number of residential foreclosures.  The law requires that before filing a Notice of Default, a lender must contact a borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, to advise the borrower of his/her right to a meeting and to schedule a meeting with the borrowers within 14 days of initial contact.

69.     The dealing between Nguyen and Chase for the purpose of loan modification in 2009 was just a "faked" campaign by Chase.

70.     During this loan modification campaign, Chase had no beneficial interest in Plaintiff's DOT and could not act as servicer of 2007-HY07 Trust because such trust had no beneficial interest in Plaintiff's DOT.  As such, these Defendants are not "Lender" within the scope of Civil Code sections 2923.5

71.     These Defendants misrepresented to Plaintiff as Lender, kept demanding documents by documents, and finally declared that Nguyen was not qualified for the loan modification program. Proof will be presented at trial for details on this faked loan modification campaign. Most recently, a Chase's clerk even orally represented to Nguyen that if the Property is out of the bankruptcy case, Chase would engage in talk of settlement.

72.     California Civil Code § 2923.5 provides that a borrower may designate an attorney to discuss options with the mortgagee, beneficiary, or authorized agent, on the borrower's behalf, to avoid foreclosure. § 2923.5 (a) states:

> (1) A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g).

> (2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

73.     Nguyen has once designated attorney Robert Hindin of Los Angeles, California, for the purpose of discussing with Chase about possible solutions for the issues on the loans. Defendant Chase did not contact the designated attorney in person or by telephone, to discuss Plaintiff's financial condition and the impending foreclosure. Chase did not call, it did not write, and it did not provide a toll-free HUD number to Plaintiff or her attorney. Chase did not offer to meet with Plaintiff or her attorney and did not advise them that Plaintiff had a right to request a subsequent meeting within 14 days.

74.     California Civil Code § 2923.5(g) states that a notice of default may be filed pursuant to § 2924 when a mortgagee, beneficiary, or authorized agent has not contacted a borrower provided that the failure to contact the borrower occurred despite the due diligence of the mortgagee, beneficiary, or authorized agent.   Due diligence is defined in (g) as:

> (1) A mortgagee, beneficiary, or authorized agent shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.
> (2) (A) After the letter has been sent, the mortgagee, beneficiary, or authorized agent shall attempt to contact the borrower by telephone at least three times at different hours and on different days.   Telephone calls shall be made to the primary telephone number on file.
> (B) A mortgagee, beneficiary, or authorized agent may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgagee, beneficiary, or authorized agent.
> (C) A mortgagee, beneficiary, or authorized agent satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.
> (3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgagee, beneficiary, or authorized agent shall then send a certified letter, with return receipt requested.
> (4) The mortgagee, beneficiary, or authorized agent shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.
> (5) The mortgagee, beneficiary, or authorized agent has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:
> (A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.
> (B) A list of financial documents borrowers should collect and be prepared to present to the mortgagee, beneficiary, or authorized agent when discussing options for avoiding foreclosure.   (C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgagee, beneficiary, or authorized agent.
> (D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

75.     These Defendants did none of the above.

76.     As the direct result of these Defendants' violation of the statute, Plaintiff may lose the Property through the trustee sale in contravention of the legislature intent behind the said Section.

### FIFTH CAUSE OF ACTION
#### Wrongful Foreclosure
#### (Against All Defendants)

77.     Plaintiff reaffirms and re-alleges the above paragraphs as if specifically set forth hereafter.

78.     FDIC is the receiver of WaMu assets.  There is no evidence that FDIC has conveyed its beneficial interest in Plaintiff's loans to Chase.  Nevertheless, Chase falsely claims to be successor in interest to WaMu  and fraudulently assigned its non-existence interest to 2007-HY07 trust with BOA as indenture trustee.

79.     Mortgage loan pooled by WaMu to be sold to the 2007-HY07 trust was a true sale to multiple intermediary parties.  The purported transfer by Chase directly into the 2007-HY07 Trust on 03/27/2009, after such trust has been closed, violated the terms of the trust.

80.     The term of 2007-HY07 trust and its governing PSA contradicts claims made by BOA as its indenture trustee in having beneficial interest in Plaintiff's DOT. Such contradiction is further supported by evidence of the promissory note contained no endorsement by WaMu to anyone.

81.     Despite having no beneficial interest in Plaintiff's mortgage, these Defendants instructed CRC as trustee to record Notice of Default and Notice of Sale against Plaintiff's property.

82.     The power of sale is conferred by the mortgage under Cal. Civ. Code §2924. The Adjustable Rate Note attached herein states, "*Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder.*"  The Note states in paragraph 7(C):  "*Notice of Default. If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount.*" The Note gives the right to collect, if timely payments are not made, to the Lender and anyone who takes the Note by transfer. This does not

include a servicer who is not the Note Holder.

83.     According to the Deed of Trust, the "Lender" is Washington Mutual Bank, F.A. Consistent with the language of the Note, only the Lender is authorized under paragraph 22 of the DOT to accelerate the loan:

*"Lender shall give notice to Borrower prior to acceleration following Borrower's breach  of any covenant of agreement in this Security Instrument... "If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located."* (DOT page 13, paragraph 22).

84.     Paragraph 24 of the DOT states:

*24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located.  The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.  Without reconveyance of the property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable Law.  This procedure for substitution of trustee shall govern to the exclusion of all other provision for substitution.*

85.     These Defendants seek to foreclosure Plaintiff's property even though they have no beneficial interest in Plaintiff's loans and therefore are incapable of substituting the Trustee.

86.     As alleged in preceding paragraphs, CRC recorded a Notice of Sale signed by Deborah Brignac, as CRC Vice-President.  This is a classic robo-signing and is a forgery.

87.     Courts are putting a stop to the epidemic of forgery and robo-signing that infected the banking industry during the past ten years. Deborah Brignac's diverse signatures and notary's acknowledgment of them are fraudulent and illegal.

88.     These Defendants have no beneficial interest in Plaintiff's loan and are not the beneficiary and CRC had no authority to act on behalf of the beneficiary when someone forged her signature to the NOS. The NOS was unauthorized and fraudulent, so CRC was not authorized to initiate foreclosure against Plaintiff, when it recorded the

Notice of Default, and it was not acting for the Lender when it filed the Notices of Trustee's Sale.

### SIXTH CAUSE OF ACTION
### Quasi Contract
### ( Against All Defendants)

89.    Plaintiff reaffirms and re-alleges the above paragraphs as if specifically set forth hereafter.

90.    Chase demanded monthly mortgage payments from Plaintiff starting in October 2008, and continued to collect payments from Plaintiff until Plaintiff stopped making the payments.  Plaintiff reasonably relied upon Chase's assertion that it was entitled to payments for the reason that it had acquired certain assets from WaMu under an agreement with the FDIC.

91.    Chase knowingly accepted the payments and retained them for its own use knowing that WaMu was not a beneficiary under Plaintiff's Note on the date that its assets were transferred to Chase and therefore Chase did not acquire any right from WaMu to accept or keep Plaintiff's payments.  It would be inequitable for Chase to retain the payments it received from Plaintiff. The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money.

92.    The DOT states in Paragraph 23: *"Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee."* The obligations to WaMu under the DOT were fulfilled when WaMu received the balance on the Note as proceeds of sale through securitization to private investors. Chase has been unjustly enriched by collecting monthly payments from Plaintiff.

93.    Plaintiff seeks restitution for any payments she made to Chase that were not paid to the lender or beneficiary, if any.

### SEVENTH CAUSE OF ACTION
### Unfair Business Practice – Violation of California CC §17200 et Seq.
### (Against All Defendants)

94.     Plaintiff reaffirms and re-alleges the above paragraphs as if specifically set forth hereafter.

95.     Plaintiff was victim of a fraudulent scheme, starting out with the fabricated loan application that does not bear her signature.

96.     The fraudulent scheme induced Plaintiff to accept a mortgage for which she was not qualified based on inflated property valuations and undisclosed disregard of her own underwriting standards and the sale of overpriced collateralized mortgage pools, all the while knowing that the plan would crash and burn, taking the Plaintiff down and costing her the equity in her home and other damages.  The foregoing conduct violates numerous state statutes and common law protections enacted for consumer protection, privacy, trade disclosure, and fair trade and commerce.

97.     The fraudulent scheme consisted of selling off overpriced loans by making willful and inaccurate financial and credit information and credit disclosures regarding Defendants' borrowers, including Plaintiff, to third parties.  This false credit disclosure was critical to the success of Defendants' continued sales of the massive pools of mortgage loans necessary to perpetuate the scheme.  The Defendants were aware that if the true financial and credit information of the borrowers and the values of their real estate were accurately disclosed, the massive fraudulent scheme would end.  As a result, the Defendants repeated, reinforced and embellished their false disclosures.

98.     The Defendants knew the borrowers' financial situation and credit was inadequate to support continued loan payments, absent unsustainable inflation of property values.  These pervasive false credit disclosures to third parties (including purchasers of bundled mortgage pools created by the Defendants) constituted false credit reports in violation of various statutes and these pervasive false disclosures permitted the Defendants to continue their scheme and victimize Plaintiff.

99.     These pervasive false disclosures also caused the real estate bubble to burst.  Once it became known that some of the information provided by Defendants was false, the market for the sale of bundled loans dried up.  The Defendants began to issue foreclosure notices, property values began dropping, and then, under the weight of deflation in a market that requires inflation, the equity investments made by Plaintiff and others in her homes was lost.

100.     Defendants violated Cal. Civil Code §2924 et seq. by wrongfully foreclosing

on Plaintiff's Property.

101.    The forgoing fraudulent concealment, material misstatements, and the intentional violations of state statutes cited herein constitute unlawful, unfair and fraudulent business acts or practices and so constitute unfair business practices within the meaning of the California Unfair Practices Act.  Cal. Bus. & Prof. Code §§17200, 17500.  Sections 17200 et seq. of the California Business & Professions Code provides, in the disjunctive, for liability in the event of any such *"unlawful, unfair or fraudulent business act or practice."*

102.    The violations described herein are unlawful, in that they violate California law.  These violations are the basis for liability under §17200 of the Business and Professions Code, as is the unlawful and fraudulent activity described herein.

103.    The actions described herein are unfair and patently fraudulent in that they were conducted for the sole purpose of perpetuating an unlawful and unsustainable investment scheme.

104.    As a result of the actions, concealment and deceit described herein, Plaintiff has suffered material financial injury in fact, including as described elsewhere in this complaint, loss of equity in their home, costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs.

105.    As a result of the foregoing unlawful conduct, Plaintiff suffered further injury in fact by the filing of notices of default, notice of sale, and as such the Plaintiff suffered monetary and property loss.  Such injuries and loss included diminished credit scores with a concomitant increase in borrowing costs and diminished access to credit, fees and costs, including, without limitation, attorneys' fees and costs with respect to wrongful notices of default and loss of some or all of the benefits appurtenant to the ownership and possession of real property.

106.    The foregoing unlawful activities were pervasive and violate Business and Professions Code § 17200 et seq.

107.    As a result of Defendants' unfair competition, Plaintiff is entitled to restitution for all sums received by Defendants with respect to Defendants' unlawful

and/or unfair and/or fraudulent conduct, including, without limitation, interest payments made by Plaintiff, fees paid to Defendants, including, without limitation, the excessive fees paid at Defendants' direction as alleged, and premiums received upon selling the mortgages at an inflated value.

108.    Plaintiff is also entitled to the issuance of a temporary restraining order, a preliminary injunction, and a permanent injunction restraining and enjoining Defendants from any further concealment with respect to the sale of notes and mortgages, any further violation of §2923.5, any further violation of California law.

109.    Plaintiff is entitled to such relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.


## **RELIEF SOUGHT**

**WHEREFORE,** Plaintiff prays judgment against the Defendants, and each of them, as follows:

1.    That this court issue an Order to Show Cause and, after a hearing, issue a Temporary Restraining Order and Preliminary Injunction restraining Defendants, and each of them, during the pendency of this action, from continuing with their efforts to conduct a Trustee's Sale of the Property.

2.    That the attempted foreclosure of the Property be declared illegal and that Defendants be forever enjoined and restrained from selling the Property or attempting to sell it or causing it to be sold, either under power of sale pursuant to trust deed or by foreclosure action, and from posting, publishing, or recording any notice of default or notice of trustee's sale contrary to state or federal law.

3.    Cancellation of assignment of Deed of Trust executed by Defendant Chase as successor in interest to WaMu.

4.    That neither defendant 2007-HY07 Trust through its indenture trustee BOA nor defendant Chase be entitled to payment on the Notes.

5.    That the underlying loans be declared void as a result of Defendants'

misrepresentations, fraud, concealment, and predatory loan practices.

      6.    That Defendant Chase make restitution to Plaintiff according to proof.

      7.    For a judgment determining that Defendants have no interest in the subject property adverse to Plaintiff.

      8.    For damages in an amount according to proof.

      9.    For costs of suit and reasonable attorney fees.

      10.    For any and all other and further relief that may be just in this matter.

Dated: August 5, 2011

                                          */s/* Vince D. Nguyen
                                          VINCE D. NGUYEN
                                          Attorney for Plaintiff

**VERIFICATION**

I, TERI H. NGUYEN, am a plaintiff in the above entitled action.  I have read the foregoing VERIFIED FIRST AMENDED COMPLAINT that has the following causes of actions:

1. **Cancellation of Deed Instrument**
2. **Slander of Title**
3. **Injunctive Relief**
4. **Violation of California Civil Code § 2923.5**
5. **Wrongful Foreclosure**
6. **Quasi-Contract**
7. **Unfair Business Practice**
   **[Violation of Cal. Bus. & Prof. Code § 17200 et Seq.]**
   **(Including Injunctive Relief to Void Mortgage)**

and know the contents thereof.  The same is true of my own knowledge, expect as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury, under the laws of the State of California and of the United States, that the foregoing true and correct and that this declaration was executed in San Jose, County of Santa Clara, California.

Dated: August __4__, 2011

_____
TERI H. NGUYEN